Reginald Allen Britt ("the father") appeals from a judgment of the Geneva Circuit Court to the extent that it awarded Amanda Jean Britt ("the mother") primary physical custody of the parties' minor child. We affirm.
 Procedural History
On May 22, 2003, the father filed a complaint seeking a divorce from the mother. In that complaint, he requested that he be awarded temporary and permanent custody of the parties' minor child, whose date of birth is July 30, 1999. That same day, the father moved for an order awarding him pendente lite custody; the court entered an order awarding the father pendente lite custody and awarding the mother visitation. On June 4, 2003, the mother filed an answer to the father's complaint for a divorce and a counterclaim for a divorce in which she requested custody of the child.
On April 29, 2004, the trial commenced, but it was continued until July 8, 2004. On July 8, 2004, the parties entered into the record a settlement agreement that provided that the father would be designated the primary physical custodian of the child. The next day, the mother filed a motion to reinstate the case for trial and to set aside the settlement agreement that had been entered into the record the previous day. She attached to her motion an affidavit in which she stated that her entering into the settlement agreement was a "terrible mistake" and that she could "only believe that [she had] agreed to this arrangement because [she] had delivered [her] second child only seven days before and the pressure of the court proceeding so soon after this event clouded [her] thinking and [her] ability to make such [an] important decision in a very short period of time." On July 19, 2004, the father filed a motion in opposition to the mother's motion to reinstate. That same day, the court reset the case for trial.
On January 13, 2005, the remainder of the trial was conducted, and, on February 28, 2005, the court entered an order divorcing the parties and providing, in pertinent part:
 "Upon considering the evidence presented and having heard the testimony the court finds that it is in the best interest of the minor child that the parties be vested with Joint Legal Custody of the child. . . . The major impediment to the parties making a joint custody arrangement work will be the ability and willingness of the parties to cooperate and work with one another in furtherance of the best interest of the child.
 "The child continues to reside in the household where he has lived for the past several years and the court anticipates that he should continue to spend a *Page 452 
significant percentage of his time there. However, there is no reason [the child] should not also be in his mother's house-hold for significant periods of time and especially when she is not working. She works an unusual schedule wherein her `off days' change from week to week. The court finds that it is in the best interest of the minor child that his mother's custodial visitation be scheduled on, but not limited to, her times off from work and that the minor child have frequent and significant visitation periods with his mother.
 "Pursuant to Ala. Code § 30-3-153 the parties are directed to meet once again with the family court mediator to develop a fair and reasonable plan and schedule which provides, among other things[,] for the child to spend custodial periods with his mother on her days off as well as at other time[s,] including six weeks each summer. In the event[] that the parties cannot reach an agreement regarding visitation and custody the court will issue [its] own order. Custodial visitation and child support, if appropriate, are reserved pending mediation and until such time as the court can consider the mediated agreement or the court['s] own visitation order if the parties are unable to agree."
On December 12, 2005, the father filed a motion requesting the court to clarify the custodial visitation periods and to specify the amount of child support to be paid. On January 5, 2006, the mother responded to the father's motion. That same day, she filed what she titled a "counterclaim," averring that a material change in circumstance had occurred since the date of the divorce and that the father should no longer be allowed to share joint custody of the child.[1]
On August 24, 2006, the trial court held a hearing on the issue of custody, and, on October 20, 2006, the court entered a judgment providing, in pertinent part:
 "The case was heard on August 24, 2006, the principal issue being custody and visitation. This court originally awarded Joint Legal Custody stating in the decree of divorce,
 "`The major impediment to the parties making a joint custody arrangement work will be the ability and willingness of the parties to cooperate and work with one another in furtherance of the best interest of the child.'
 "The order stated further that,
 "`In the event that the parties cannot reach an agreement regarding visitation and custody the court will issue its own order. Custodial visitation and child support, if appropriate, are reserved. . . .'
 "The decree of February 28, 2005 was not a final order due to the Court's reserving custody, visitation and support. Following this order[,] on December [12,] 2005 a motion to clarify was filed by the Plaintiff/father, Reginald Britt, alleging[,] among other things, that
 "`the parties are unable to coordinate visitation between the parties. . .' and that the mother `does not handle or attempt to handle and/or participate in weekday parental responsibilities. . . .'
"In 2005 several continuances were granted, changes of attorneys occurred and a motion to modify was filed.
"Upon considering the evidence and testimony the Court hereby enters the following findings and order: *Page 453 
 "Clearly the parties were never able to reach an agreement on joint custody as was strongly encouraged by the Court in the decree of February 2005.
 "At the hearing on August 24, 2006 the mother testified that she has a hard time communicating with the father and that at times he had been uncooperative in arranging the exchange of the child. She stated that the child . . . is sometimes rude and ugly to her upon returning from his father's and has actually on occasion called her derogatory names such as `big mama' and `fat ass.' The mother suspects that [the child] hears these comments from his father. The father denies that he makes such comments or that he has ever heard [the child] make these comments. The father also alleged a lack of cooperation from the mother.
 "It is fairly clear that the parties have a communication problem that is not conducive to the level of cooperation necessary for a workable true joint legal custody arrangement. Pursuant to the divorce decree wherein the court reserved custodial visitation and child support and in light of the fact that the parties[] failure to cooperate and communicate does not allow for joint legal custody, it is therefore hereby Ordered that the parties herein[,] the father . . . and the mother . . ., are vested with joint custody with the mother having primary custody and the father having custodial visitation. The father's custodial visitation shall be every other weekend from the time school is out on Thursday until the following Monday morning when school starts beginning Thursday, October 26, 2006 and every other weekend thereafter from Thursday until Monday morning. Also every other Wednesday from the time school is out until Thursday morning beginning Wednesday, November 1, 2006. The father shall also have custodial visitation rights every Christmas for ten days ending on Christmas day at noon in odd numbered years and beginning on Christmas day at noon in even numbered years and Thanksgiving holidays in odd years, one-half of all spring and fall school breaks or alternate such breaks at the father's discretion, as well as on the child's birthday in odd years and either the day prior or after the child's birthday in even years, on father's day each year and on the father's birthday each year and for six weeks each summer with the mother having custodial visitation from Friday at 5 p.m. until Monday at 9 a.m. at the end of the second and fourth weeks of summer visitation. Regardless of other specific visitation, the mother shall have the child with her on the child's birthday in even years and on mother's day and the mother's birthday every year. The father is entitled to visitation at all other reasonable times and places, as agreed by the parties."
On November 17, 2006, the father filed a motion for a new trial or, in the alternative, to "modify or vacate order." The mother responded to that motion on December 18, 2006. The father's post-judgment motion was denied by operation of law on February 15, 2007. See Rule 59.1, Ala. R. Civ. P. The father filed his notice of appeal on March 29, 2007.
 Discussion
On appeal, the father argues (1) that the February 28, 2005, order was a final adjudication of custody in which he was designated the child's primary physical custodian; (2) that even though, in the February 28, 2005, order, the trial court reserved the issues of "[c]ustodial visitation and child support" the trial court should have applied the "[Exparte] McLendon [, *Page 454 455 So.2d 863 (Ala. 1984),] standard"[2] in making its October 20, 2006, custody determination; and (3) that the trial court erred by not implementing the parties' July 8, 2004, settlement agreement.
We first consider whether the February 28, 2005, order was a final order as to the issue of physical custody, thus making it necessary for the trial court to apply the "McLendon
standard" in making its October 20, 2006, custody determination. Based on the language of the February 28, 2005, order as well as the trial court's interpretation of that order as set forth in the October 20, 2006, judgment, we conclude that, with regard to physical custody, the February 28, 2005, order was a pendente lite order.
 "Pendente lite orders . . . are generally entered only during the pendency of the litigation, and are usually replaced by a final order or decree which is entered at the end of the litigation. . . . [A] pendente lite order . . . clearly envisions a temporary disposition of custody pending a later final determination of the custody dispute."
Sims v. Sims, 515 So.2d 1, 2 (Ala.Civ.App. 1987).
In the February 28, 2005, order, the court did not designate either party as primary physical custodian, nor did it state that the parties would share joint physical custody. Instead, the court gave the parties an opportunity to come to an agreement regarding physical custody and visitation. The court stated: "In the event[] that the parties cannot reach an agreement regarding visitation and custody the court will issue [its] own order." It is evident from the language of the order that the custody and visitation provisions of the February 28, 2005, order would be replaced by a final judgment based either on a settlement between the parties or, if the parties could not reach an agreement, on the trial court's own determination. Further, in the October 20, 2006, judgment, the court stated that it had not made a final determination regarding the issues of custody, visitation, and support in the February 28, 2005, order. See, e.g., Hallman v. Hallman, 802 So.2d 1095,1098 (Ala.Civ.App. 2001) (recognizing a trial court's "inherent power to interpret, implement, or enforce its own judgment"). Based on the foregoing, we reject the father's argument that the February 28, 2005, order was a final judgment with regard to physical custody of the child.
Because the trial court's February 28, 2005, order was a pendente lite order with regard to physical custody, the trial court was not required to determine that a material change of circumstances had occurred between the entry of the pendente lite order and the entry of the final judgment. Baine v.Baine, 510 So.2d 262, 263 (Ala.Civ.App. 1987). Because the only custody order in this case before the entry of the October 20, 2006, judgment was a pendente lite order, theMcLendon standard was inapplicable, and the applicable standard was, instead, "`the best interests of the child.'"Baine, 510 So.2d at 263 (quoting Perry v.Perry, 460 So.2d 1324, 1326 (Ala.Civ.App. 1984)). Accordingly, we reject the father's argument that the trial court erred by failing to apply the McLendon standard in its October 20, 2006, custody determination. *Page 455 
We next address whether the trial court erred by not implementing the parties' July 8, 2004, settlement agreement. In Porter v. Porter, 441 So.2d 921, 924-25
(Ala.Civ.App. 1983), this court stated that it is "within the discretion of the court to permit [a party] to repudiate his [or her] agreement for good cause shown." In this case, the mother submitted an affidavit stating that she had just delivered a baby seven days before entering into the settlement agreement and that the pressure of the court proceeding so soon after that delivery had impaired her judgment. We cannot conclude that the trial court exceeded its discretion in allowing the mother to repudiate the July 8, 2004, settlement agreement and proceeding to a trial on the merits.
Based on the foregoing, we affirm the trial court's judgment.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
[1] The mother's "counterclaim" was deemed to have initiated a new action by the trial court and was assigned a separate case number, DR-03-130.01.
[2] "[T]he McLendon test for a change of custody after custody is awarded in a divorce judgment is that the noncustodial parent seeking a change in custody must demonstrate (1) that he is fit to be the custodial parent; (2) that material changes that affect the child's welfare have occurred since the original award of custody; and (3) that the positive good brought about by the change in custody will more than offset the disruptive effect of uprooting the child."Ex parte Martin, 961 So.2d 83, 87 (Ala. 2006).